## WINDOW GLASS MACH. CO. et al. v. PITTSBURGH WINDOW GLASS CO. et al.

(District Court, W. D. Pennsylvania.  January 18, 1921.)

### No. 240.

Patents ⟂328—834,165, for a glass drawing and shaping machine, held void for inoperativeness.

> The Raspillaire patent, No. 834,165, for a glass drawing and shaping machine, *held* void as covering a machine consisting of both a drawing implement and former, which is inoperative. Claim 15, for a drawing implement in a machine for drawing glass, adapted to be dipped into a glass bath and to draw glass therefrom, said implement provided with a groove to receive the molten glass, cannot be construed separately from the machine of which it forms a part as intended to cover the invention of a cold bait or drawing implement.

In Equity.  Suit by the Window Glass Machine Company and the American Window Glass Company against the Pittsburgh Window Glass Company, the Pittsburgh Plate Glass Company, and Walter A. Jones.  Decree for defendants.

Decree affirmed 276 Fed. 849.  See, also, 276 Fed. 197.

Bakewell, Byrnes & Stebbins, of Pittsburgh, Pa., for plaintiffs.
Charles Neave, of Boston, Mass., for defendants.

THOMSON, District Judge.  In this suit infringement is alleged of claim 15 of Raspillaire patent, No. 834,165, for a device designated as a "glass drawing and shaping machine."  The Pittsburgh Window Glass Company is charged with the infringement; the Pittsburgh Plate Glass Company and Jones, because of certain interests held in the patent in suit, being joined as defendants.

Briefly stated, the position of the plaintiffs is that the claim in suit is a broad pioneer claim for a hollow, cold bait, having an internal ledge or groove over which the glass flows and forms a chilled ring, by which a cylinder or other hollow glass article may be drawn; that two different inventions are disclosed in the patent, namely, the "former" and the "bait," either of which may be used without the other; and that it was the intention of the patentee to broadly protect his new cold bait for any purpose in drawing hollow glass articles, whether used with a former or without; that the claim in suit is for a complete, separate, operative device, that is, a cold bait, forming a distinct advance in the glass art; that the bait is operative, in connection with the Raspillaire former, and also when air distension is used; but that, if all else in the patent is held inoperative and worthless, claim 15 is still good and valid; that if the Raspillaire bait can be shown to be operative with any form disclosed by Raspillaire in any of his patents, the court cannot strike down claim 15 for lack of utility; and finally that because the defendants use a bait of hollow ring form, with an internal annular ledge, over which the glass flows where it is chilled, making an anchor by which the draw is made, therefore infringement is established.

⟂For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The defense is that Raspillaire did not in any degree advance the glass art; that the machine disclosed by the patent is entirely inoperative and useless; that the claim in issue does not purport to be for a cold bait, and is invalid in view of the prior patents; and that defendants use a bait created years after the Raspillaire patent operated in a new manner and on different principles, and has therefore taken nothing from Raspillaire.

Three patents were issued to Raspillaire, two in the fall of 1905, and one in the spring of 1906. All the applications were pending at the same time, the patent in suit being the second to issue on an application last filed.

In all these patents a core or former is provided, which imposes its shape on the article being drawn; the shape of the core being altered to accord with the desired shape of the draw. At that time in the art, the cylinder was shaped by distending air entering the cylinder through the bait; a uniform, diameter being maintained by regulation of the air pressure. By this means and in no other, the cylinder took and maintained its form, rising from the bath of molten glass in contact with no shaping surface whatever. The draw was made by a bait preheated to a temperature so high that when lowered into the bath the glass and the metal fused, and by the firm adherence of the glass to the bait, the cylinder was drawn. The cold bait operates on a wholly different principle. It is constructed with some form of a groove or ledge, so that when lowered comparatively cool into the bath, there is no fusion, but the molten glass running into the ledge, when chilling occurs, forms a novel sufficiently strong to draw and support the rising cylinder.

It is not controverted that the cold bait, being more durable, more economical in operation, and requiring less skill to manipulate, is of high utility, being now almost solely in use in the numerous glass factories of the country.

I am constrained to find against the plaintiffs under the claim in suit, for the following reasons:

1. The invention "relates to a machine for simultaneously drawing glass from a molten mass of glass and imparting the desired shape to the draw"; that is, a machine to draw and shape. The shape is effected by what is termed the "former, which determines and imposes upon the draw the desired shape." No distending air is used, the glass being shaped solely by the former, without the aid of any auxiliary device or mechanism, the drawing glass being in contact with the shaping surface of the former. The means co-operating therewith to draw the glass about the former is the bait. This has an operatively close fit to the former, the cross-sectional dimensions and configuration of the one conforming to the other.

2. I am satisfied that this drawing and shaping machine disclosed by the patent, which proposes to draw articles of any shape desired, solely by means of the former and the drawing implement therewith, is a totally inoperative and worthless device. To hold otherwise, we would have to forget all the lessons taught by Lubbers, who founded and largely worked out the manifold problems of this delicate and intricate art. We must remember that the draw must start from a molten bath

and the glass must be brought into form while in a molten state at a high temperature, and must be kept in a molten state throughout the draw; that when the Raspillaire patents were issued only cylinders could be drawn; and that those cylinders then, as now, were during the draw so plastic and sensitive that no valve was ever found sufficiently delicate in operation to regulate the slight air pressure required to keep the cylinder of uniform diameter; that the rising cylinder is almost as susceptible to the action of air currents as a silk gown, and during the draw it had a breathing action like the rising and falling of the chest in respiration; that by means of surface tension, the cylinder has a tendency to travel across the bath, to overcome which Lubbers found that he must start with, and maintain, symmetry of heating and cooling conditions around the center of the draw; that failing in this, the cylinder would contact with the side of the receptacle and pull apart. Raspillaire did not propose to change in any way the properties or character of the molten glass, nor attempt to eliminate a single problem which always confronted the art when any draw was attempted. He simply proposed the impossible method of drawing this sensitive molten mass by direct contact with an internal solid body, to give it shape. In doing so, he utterly ignored the problem of surface tension, the differences in temperature between the molten glass and the former, and the sticking or adherence of the glass to the former, which would inevitably pull apart and destroy the cylinder. There is no evidence whatever that any cylinder, much less any article not cylindrical in form, was ever drawn by the machine disclosed by Raspillaire. And certainly there is no sort of demonstration that the patent discloses an operative method and apparatus for making window glass.

3. The patent does not teach the use of a drawing implement dissociated from the former and mechanism described in the patent. The bait described was a special drawing implement for a special purpose, definitely disclosed. It was to be combined with the former, to have an operatively close fit to the former, so that the glass will contact with the active shaping surface of the same. The glass is to be held in the drawing implement by being chilled and setting. This is brought about by the combined action of both the bait and the former. A cooling fluid circulates through the lower portion of the former, which, when lowered and partially submerged in the glass, results in chilling the glass from which the draw is made. When the bait is lowered and the glass flows into the groove, the lip or anchor thus formed is further chilled by the application of the presser device described. As the bait moves away from the bath, and along the cooled surface of the former, this "chills and imparts sufficient set to the glass to prevent the walls of the draw collapsing." The patent thus plainly teaches that the chilling of the glass, effected through the combined action of the bait and the former, is an essential factor in the successful operation of the device; and the art is given no information as to the use of the drawing implement except in connection with the former.

4. Claim 15 reads as follows:

"In a machine for drawing glass, a drawing implement adapted to be dipped into a glass bath and to draw glass therefrom, said implement provided with a groove to receive the molten glass."

This claim on its face does not purport to be for a cold bait, as nothing is said as to the temperature at which it is to be used. It is a claim for a bait having a groove. It does not appear that when the application was pending, it was ever suggested that the claim was for a cold bait. But the contrary does appear in this way: Claim 15 was originally claim 6 in the application as filed. That claim was rejected in view of the prior Proeger patent 763,633. In the amendment of January 29, 1906, claim 6 was canceled and reinstated as the present claim 15. At the time of the amendment, the applicant called attention to the fact that the application for his patent 804,173 was filed March 18, 1903, before the application for the Proeger patent, and that as his present application stood as a division of the application of March 18th, the Proeger patent had no standing as a reference. In other words, the situation was that the claim would have been held anticipated by Proeger, had not Raspillaire disclosed the subject-matter of the claim at an earlier date than Proeger, and on this position the claim was allowed. An examination of Raspillaire patent 804,173 shows that it discloses a hot bait, one in which "the thickness of the plunger regulates the thickness of the glass." Figure 5 shows the molten glass adhering to the bottom, the outside and inside of the bait. These are characteristics of the hot bait alone, and the witnesses seem to agree that in that patent a hot bait was disclosed.

5. There is some evidence in the patent, and it may be true, that Raspillaire intended to use this drawing implement without any preheating, as when he speaks of the lip of glass in the groove being chilled by contact with the presser device and with the material of the bait; and when the inventor describes detaching the two-part bait from the glass, by opening the plunger head. But certain it is that the patentee did not teach to the art the use of a cold bait. Though the patents were issued in 1905 and 1906, no one made use of anything disclosed therein. The art remained as before. As the Commissioner of Patents said in the interference case:

"No advance practically followed from Raspillaire's suggestion. For four or five years after his patents were granted the art was conducted exactly as it had been conducted since glass cylinders have been made by machinery."

From the foregoing considerations, claim 15 in suit must be disallowed and the bill dismissed at plaintiffs' cost. Let a decree be so drawn.